Hancock, Jr., J.
(dissenting). The majority holds that the limited subsidiary-by-subsidiary offset method prescribed in the audit guideline is rational because it is not specifically prohibited by Tax Law § 208 (9) (b) (6) and is not inconsistent with the purpose of that section. This reasoning proves nothing. Indeed, the netting approach urged by Unimax also fully *148 complies with the statutory language of section 208 (9) (b) (6) and furthers the purpose of that section. The majority never addresses the only question in the case: whether the additional and gratuitous disallowance of interest deductions— which results from use of the audit guideline’s subsidiary-by-subsidiary approach rather than the netting approach — has any rational relation to the statutory purpose of preventing parent corporations from obtaining a double tax benefit. The majority’s only argument is that because this additional unmandated disallowance is not prohibited, it must be within the Tax Department’s discretion. But even the Tax Department’s discretion cannot encompass the use of an audit guideline which bears no relation to any statutory purpose and arbitrarily disallows valid exclusions from corporate net income. Thus, we agree with the conclusion of the Administrative Law Judge below that the audit guideline "is nothing but an arbitrary measure designed to reap the highest amount of tax possible.”
I
A summary of the relevant statutes and Department guidelines is helpful in understanding this case. Under the State franchise tax on business corporations (Tax Law art 9-A), a franchise tax is imposed on a corporation’s entire net income, which is generally the same amount reported as Federal taxable income modified by additions and subtractions prescribed by State statute. A corporation may exclude from its net income the "income, gains and losses from subsidiary capital” (Tax Law § 208 [9] [a] [1]). Also, a corporation, as under Federal law, may deduct interest expenses incurred from third-party loans (see, Internal Revenue Code [26 USC] § 163 [a]). Absent a statute, under these two provisions, where a corporation has invested borrowed money in the capital of a subsidiary and derived income from its subsidiary, a double tax benefit would result from the parent’s deduction of the interest paid on the loan and the parent’s concurrent exclusion of the income from its subsidiary that was derived from the invested third-party loan (see, Matter of Woolworth Co. v State Tax Commn., 126 AD2d 876, 877, affd 71 NY2d 907). Tax Law § 208 (9) (b) (6) prevents this double benefit by prohibiting a parent corporation from excluding from its entire net income its third-party interest payments to the extent that the third-party loans were attributable, directly or indirectly, to a corporation’s investment in its subsidiaries.
*149 When borrowed funds cannot be directly traced to specific investments in a subsidiary, the Department guidelines calculate the interest indirectly attributable to subsidiary capital by the following formula:
Investment in Subsidiaries Gross Interest indirectly
- X Interest = attributable to
Total Assets Expense subsidiary capital
This formula is based on the reasonable assumption that each corporate asset shares the cost of third-party loans in proportion to its value. Thus, the greater the amount of a corporation’s investment in its subsidiaries, the greater the amount of interest indirectly attributable to subsidiary capital, and the lesser amount of interest that may be deducted.
A corporation’s investment in its subsidiaries consists of the aggregate of three components: (1) investments in subsidiary stock, (2) paid-in capital, and (3) loans and advances (see, Tax Law § 208 [4]). The only issue in dispute is the Department’s method for calculating the third component, the loans and advances to subsidiaries.* The challenged guideline for determining the loan component of subsidiary investment, which was first issued in June 1983, at least four years after the tax years in question, provides:
"In determining the amount of loans and advances, loans and advances to the parent by one of its subsidiaries may be offset against loans and advances to such subsidiary. At no time may loans and advances from a subsidiary reduce loans and advances from the parent to an amount lower than zero (0). Loans and advances to the parent may not be offset against capital stock or against loans and advances to any other subsidiary” (emphasis added).
In other words, the guideline forbids netting the amount of a parent’s loans to one subsidiary with the amounts loaned to the parent by any other subsidiary.
II
We agree with the Administrative Law Judge below that *150 the guideline’s prohibition against netting loans and advances between the parent corporation and all its subsidiaries is irrational and serves only to maximize tax liability by arbitrarily inflating the total of the taxpayer’s investments in its subsidiaries and, thus, reducing the interest deduction that the taxpayer would otherwise enjoy. An example will serve to illustrate the effect of the guideline. If Unimax lends $20 to subsidiary A, and then borrows $15 back from the same subsidiary A, under the guideline it has loaned $5 to its subsidiaries. If Unimax lends $20 to A and borrows $15 from a different subsidiary B, under the guideline it is instead deemed to have loaned $20 to its subsidiaries despite the obvious economic reality that Unimax has loaned only $5. Instead of deductible interest attributable to $5 worth of third-party loans being disallowed, interest attributable to $20 worth is disallowed although the financial position of the corporation and its subsidiaries is the same in each example. The guideline is arbitrary because it requires such disparate results based on functionally equivalent financial transactions.
In both examples, the over-all economic effect of the transactions is that the parent corporation has loaned $5 to its subsidiaries. As previously discussed, the sole purpose of Tax Law § 208 (9) (b) (6) is to prevent a double tax benefit by disallowing the interest costs from outside loans that are attributable to a parent’s loans to its subsidiaries. In both cases, disallowing the interest deduction on the $5 the parent loaned to its subsidiaries completely fulfills the purpose of section 208 (9) (b) (6). Disallowing the interest on the additional $15 in the second example can have nothing to do with the already fulfilled statutory purpose and can serve only to gratuitously increase the parent’s tax liability.
The irrationality of the guideline’s subsidiary-by-subsidiary method may be further demonstrated. The Department and the majority concede that if a Unimax subsidiary loaned money directly to another subsidiary, rather than having the same loan pass through Unimax, the loan would have no effect on the section 208 (9) (b) (6) disallowance of deductible interest; whereas, as seen, the opposite would be true if the loan passes through the parent. Put another way, if subsidiary A loans $20 directly to subsidiary B, Unimax’s interest deductions are not affected. But if the same loan passes through Unimax, the guideline deems that Unimax loaned $20 to its subsidiaries and requires that the interest cost on outside loans attributable to that $20 cannot be deducted. Where *151 subsidiary A passes the $20 loan to subsidiary B through the corporation acting as a clearinghouse, instead of sending it directly to subsidiary B, no rational reason exists why the corporation’s tax liability should increase. The application of a tax methodology which produces such unreasonable results is arbitrary (see, Matter of Wurlitzer Co. v State Tax Commn., 35 NY2d 100, 106). In contrast, under the netting approach, in both examples, Unimax’s interest deductions would not change because Unimax’s investment in its subsidiaries has not changed.
The majority’s only claim is that the guideline is rationally related to the purpose of section 208 (9) (b) (6) because it is not prohibited by the statute and does not frustrate the purpose of preventing a double tax benefit. Stated in the affirmative, the majority’s argument reduces to this: because the statute’s purpose is to disallow certain interest expense deductions, any audit guideline which at least achieves this purpose is rational even if it goes beyond it by disallowing interest deductions which are not required. In other words, because disallowing x amount is alright, disallowing more than x must be alright. However, nothing in the statute supports the majority’s argument because, by any construction, the only purpose of the statute can be to exclude a corporation’s deduction of the interest costs from outside loans to the extent that these loans are reloaned by the corporation to its subsidiaries and thus increase the corporation’s over-all subsidiary investment.
The majority misconstrues our argument as focusing on the obvious unfairness of the guideline (majority opn, at 144^145, 146). To be sure, the guideline is unfair, but that is not the point. Our point is merely that the majority offers no explanation of how the guideline’s mandated subsidiary-by-subsidiary method is in any way related to the purpose of section 208 (9) (b) (6). By contrast, the netting method completely fulfills the purpose of the statute by disallowing the interest deduction only on outside loans which can be attributed to a parent’s net loans to its subsidiaries. The guideline’s disallowance of interest deductions beyond this point serves no statutory purpose and, therefore, lacks any rational basis.
Accordingly, we dissent and would reverse the Appellate Division order and remit the matter to the Tax Appeals Tribunal.
*152 Chief Judge Wachtler and Judges Simons and Kaye concur with Judge Bellacosa; Judge Hancock, Jr., dissents and votes to reverse in a separate opinion in which Judges Titone and Alexander concur.
Judgment affirmed, with costs.

 Contrary to the majority’s suggestion, neither the dissent nor Unimax is "ignorpng] the interplay between the loan element and various other elements of the formula” (majority opn, at 147). We simply recognize the conceded fact that the other subsidiary investment components are not in dispute and thus are not relevant to the analysis.